FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 21, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANGELA R. S.,[1]<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[2]<br><br>　　　　　　Defendant. | NO:  2:22-CV-00164-LRS<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 11, 12.  This matter was submitted for consideration without oral

---

[1] The last initial of the claimant is used to protect privacy.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the Defendant in this suit.

ORDER - 1

1  argument. Plaintiff is represented by attorney Christopher H. Dellert. Defendant is
2  represented by Special Assistant United States Attorney Heidi L. Triesch. The
3  Court, having reviewed the administrative record and the parties' briefing, is fully
4  informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 11, is
5  denied and Defendant's Motion, ECF No. 12, is granted.

## JURISDICTION

Angela R. S. (Plaintiff) filed for disability insurance benefits on August 13, 2019, and for supplemental security income on August 12, 2019, alleging in both applications an onset date of October 1, 2014. Tr. 232-39. Benefits were denied initially, Tr. 127-33, and upon reconsideration, Tr. 138-43. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on July 14, 2021. Tr. 43-69. On July 21, 2021, the ALJ issued an unfavorable decision, Tr. 12-35, and the Appeals Council denied review. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 39 years old at the time of the alleged onset date and 45 years old at the time of the hearing. Tr. 20. She completed two years of college and has a medical assistant certificate. Tr. 20, 64. She last worked as a caregiver. Tr. 62.

ORDER - 2

1  She also has work experience as a receptionist and medical assistant.  Tr. 63-64.

2  Plaintiff testified that she is unable to work due to a back injury, frequent migraine

3  headaches, forgetfulness, and hearing issues.  Tr. 57.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's

ORDER - 3

decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is

ORDER - 4

engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

ORDER - 5

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

ORDER - 6

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 1, 2014, the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: mild degenerative disc disease of the lumbar spine with chronic low back pain; mild degenerative disc disease of the cervical spine with migraines; status-post right ankle injury; morbid obesity; depression; posttraumatic stress disorder (PTSD); and somatic symptom disorder. Tr. 18.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 18. The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> [S]tanding and walking is limited to 4 hours so she needs the ability to alternate positions to accommodate this limitation as needed. She can perform postural activities frequently except climbing of ladders, ropes, or scaffolds, stooping, crouching, and crawling are limited to occasional. She needs to avoid concentrated exposure to vibrations and hazards. From a psychological perspective, the claimant can understand, remember, and carryout [sic] simple routine tasks. She can maintain concentration, persistence, and pace on simple routine tasks for the two-hour intervals between regularly scheduled breaks.

ORDER - 7

>She needs a predictable work environment with seldom change.
>There should be no fast-paced production rate of work. Interaction
>with the public, coworkers, and supervisors is limited to superficial.

Tr. 20.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 26. At step five, after considering and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as routing clerk, collator operator, and office helper. Tr. 27. Thus, the ALJ determined that Plaintiff has not been under a disability as defined in the Social Security Act from October 1, 2014, through the date of the decision. Tr. 28.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 11. Plaintiff raises the following issue for review: whether the ALJ properly considered the evidence regarding Plaintiff's headaches. ECF No. 11 at 2.

## DISCUSSION

Plaintiff contends the ALJ did not properly consider the impact of her headaches on her ability to sustain activity. ECF No. 11 at 2. According to Plaintiff, the ALJ's error in evaluating her headaches led to errors in the RFC and step five findings. ECF No. 11 at 2.

ORDER - 8

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that the intensity, persistence and limiting effects of these symptoms are not consistent with the medical and other evidence in the record. Tr. 21.

1. Malingering

Defendant argues the record contains evidence of malingering and therefore the ALJ was not required to provide clear and convincing reasons for discounting Plaintiff's headache allegations. ECF No. 12 at 4-7. As noted above, the ALJ must give clear and convincing reasons for rejecting a claimant's symptom testimony only if there is no evidence of malingering. *See Ghanim*, 763 F.3d at 1163; *Molina*, 674 F.3d at 112; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Lester v. Chater*,

ORDER - 9

81 F.3d 821, 834 (9th Cir. 2005).  Defendant cites the November 2019 consultative psychological exam by Catherine A MacLennan, Ph.D. which the ALJ found to be "very persuasive."  Tr. 25, 493-99.  Dr. MacLennan found Plaintiff's performance on the mental status exam "indicated probable exaggeration of memory problems or malingering of memory problems."  Tr. 496.  She found Plaintiff's low performance on the mental status exam is "very unlikely" based on the activities Plaintiff engages in.  Tr. 498.  The ALJ noted that Dr. MacLennan concluded that Plaintiff appeared to exaggerate her memory problems and functional limitations to an extent that it was impossible to form an opinion about her actual abilities and functioning as it related to her ability to work.  Tr. 23.

      Defendant further notes that the ALJ considered the opinion of Dr. Toews, the medical expert, which the ALJ found to be persuasive.  Tr. 23-25, 49-53.  Dr. Toews reviewed Dr. MacLennan's findings and noted that Plaintiff's mental status exam score was 13 out of 30.  He opined, "[a] score that low would basically indicate that a person probably should be in a nursing home or psychiatric facility.  It's extremely low.  It is almost never seen to be that low."  Tr. 49.  According to Dr. Toews, "[t]he only situation this would bring up would be the possibility of and likelihood of malingering."  Tr. 49.  Dr. Toews also discussed Plaintiff's various activities which are inconsistent with the mental status exam score.  Tr. 50-51.

      Defendant also cites the ALJ's conclusion that there was a "markedly discrepant" difference between Plaintiff's presentation in the emergency room after

ORDER - 10

a November 12, 2019 motor vehicle accident, her presentation at a psychological evaluation two days later, and at a physical consultative evaluation two days after that. ECF No. 12 at 5-6; Tr. 22.  The ALJ noted minimal and mild physical exam findings in the emergency room after the car accident. Tr. 21-22, 503-08.  The ALJ observed that similarly, at Dr. MacLennan's psychological exam on November 14, two days after the car accident, Plaintiff did not use an assistive device, and no unusual physical movements or pain behavior were observed.  Tr. 22, 495.  However, at a physical consultative evaluation on November 16, 2019, two days after the psychological exam and four days after the car accident, Plaintiff reported chronic low back pain as the main issue impairing her ability to work and she was "unable to move her lower back in any direction" or put her socks on.  The ALJ observed that there was no mention of a recent motor vehicle accident in the report. Tr. 22.

In a footnote in her opening brief, Plaintiff mentions that Dr. MacLennan indicated there was a "suggestion of malingering" and noted that the exam took place two days after she was in a car accident. ECF No. 11 at 6 n1.  First, Dr. MacLennan identified "probable" malingering, not a "suggestion" of malingering. Second, if Plaintiff intended to imply that the car accident impacted her performance on the psychological exam, as Defendant points out, other evidence in the record does not support this conclusion. ECF No. 12 at 6-7.  Lastly, Plaintiff's reply brief does not respond to Defendant's malingering argument.

ORDER - 11

Based on the foregoing, it appears there is affirmative evidence of malingering in the record. The ALJ would have perhaps been justified in discounting Plaintiff's symptom claims on that basis. Nevertheless, the ALJ gave reasons for the weight assigned to Plaintiff's symptom testimony. As such, the Court reviews them accordingly.

*2. Clear and Convincing Reasons*

First, the ALJ found that Plaintiff's allegations are inconsistent with the conservative treatment she received. Tr. 21. The type, dosage, effectiveness, and side effects of medication taken to alleviate pain or other symptoms as well is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 404.1529 (c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v). Claims about disabling pain are undermined by favorable response to conservative treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-1040 (9th Cir. 2008); *see also Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

The ALJ noted that in November 2016, Plaintiff reported her headaches were controlled with Advil, amitriptyline, and rest. Tr. 21, 625. She requested and was

ORDER - 12

prescribed progesterone, which had helped with headaches in the past.  Tr. 625-26.  In May 2021, it was noted that Plaintiff's headaches were stable on amitriptyline.  Tr. 772.  Amitriptyline was increased to accommodate reports of more frequent headaches.  Tr. 772.  The ALJ also noted the record reflects no evidence of regular treatment with a neurologist and no evidence of emergency room visits for headaches.  Tr. 21.  On this basis, the ALJ reasonably concluded that Plaintiff received conservative treatment.

Plaintiff suggests the ALJ erred because she was seen by a neurologist in 2015 and 2016.  ECF No. 11 at 9 (citing Tr. 625, 641, 645).  The records cited by Plaintiff are primary care treatment notes which reference neurology referrals.  Tr. 624 (1/22/17 – requesting referral to different neurologist), 641 (12/15/15 - "neurology appointment is pending"), 645 (12/8/15 – "Referred to Neurology"). The ALJ accurately observed that there are no ongoing neurology treatment records in the case file.  Tr. 21.   Plaintiff herself notes that "[b]ecause her headaches were generally responsive to amitriptyline" there was no need for further neurological consultation, ECF No. 11 at 10, which actually supports the ALJ's point that Plaintiff's headaches responded to conservative treatment.  Plaintiff also asserts that she would not need to go to the hospital unless she was experiencing a different kind of headache "or if they became intractable."  ECF No. 11 at 10.   This also supports the ALJ's conclusion regarding conservative treatment.  Plaintiff essentially argues that her response to conservative treatment is not inconsistent with her allegations.

ORDER - 13

ECF No. 11 at 10.  However, the ALJ's interpretation of the record is reasonable, and this is a clear and convincing reason supported by substantial evidence.

Plaintiff additionally argues the ALJ should have conducted further inquiry at the hearing with "questions about why Plaintiff had not sought more aggressive treatment." ECF No. 11 at 16.  In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  The duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *Id.*  Plaintiff notes her counsel "elicited testimony about the frequency, duration, and steps she took to deal with [her headaches]." ECF No. 11 at 16.  In this case, the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence.  *See Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).

Second, the ALJ found that Plaintiff's allegations of disabling headaches are inconsistent with her contemporaneous reports to providers.  Tr. 21.  The ALJ noted that Plaintiff alleged headaches occurring four to five days per week, and that her mother submitted a statement that Plaintiff's headaches significantly interfere with her activities of daily living.  Tr. 20, 319-21, 333-35.  The ALJ noted that in November 2016, Plaintiff reported one to two headaches per week and described them as "mild migraines." Tr. 21, 625.  In May 2021, Plaintiff reported chronic

ORDER - 14

intermittent headaches "for years" and it was noted that she was stable on amitriptyline.  Tr. 21, 772.

Plaintiff argues the record demonstrates that she was experiencing headaches and migraines that impacted her functioning more frequently over time, despite her medications.  ECF No. 11 at 7.  She cites records from 2015, 2016, and 2017 which show that after complaining of headaches in December 2015, Tr. 644, she was referred to neurology, started taking 100 mg of amitriptyline, and reported that her migraines had "completely resolved" in April 2016.  Tr. 636.  In November 2016 she reported "mild migraines" which were "controlled" with medication.  Tr. 625.  In January 2017, Plaintiff had ongoing non-migraine headaches 1-2 times per week, which were improved with medication.  Tr. 623.  Plaintiff also cites an August 2018 office visit record noting Plaintiff reported she is unable to work at computers due to chronic intermittent headaches, Tr. 471, and an October 2019 counseling record noting Plaintiff "get[s] migraines from [her husband'] alarm clocks," Tr. 533.  None of these records contradict the ALJ's finding; rather, they seem to support the conclusion that her headaches are not as severe as alleged.

Plaintiff also cites an October 2020 record indicating that she reported to her mental health counselor an "increase in headaches" as well as an "increase in activity," Tr. 706, and in March and April 2021 she reported to her mental health counselor "headaches almost every day" and "increased" migraines.  Tr. 802, 804.  As noted *supra*, in May 2021, Plaintiff's amitriptyline was increased from 100 to

ORDER - 15

150 mg due to her complaints of more frequent headaches, but she was noted to be stable on that medication. Tr. 772. In all, the ALJ's conclusion that Plaintiff's allegations are inconsistent with her reports to medical providers is supported by the record. Even if the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Andrews v. Shalala,* 53 F.3d 1035, 1039–40 (9th Cir.1995)). Plaintiff has not demonstrated any error, and this is a clear and convincing reason.

Third, the ALJ found Plaintiff's allegations of disabling pain and limitations are inconsistent with her reported activities. Tr. 22. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ noted that in August 2019, Plaintiff reported progress in walking uphill to get home and driving a snowmobile despite her anxiety, and was trying to accomplish small sewing projects. Tr. 22, 810. Plaintiff told her counselor in July 2020 she was being more active by going outside, walking more, and that she got some exercise videos. Tr. 22, 718. In August 2020, Plaintiff reported increased physical activity and appeared to be benefiting from community connections. Tr. 22-23, 711. In November 2020, Plaintiff reported positive impact from a trip to Wenatchee and time with a friend. Tr. 23, 701.

ORDER - 16

Plaintiff argues the activities cited by the ALJ do not undermine her allegations about migraines. ECF No. 11 at 13-14. Defendant does not respond to this argument. ECF No 12 at 7-11. Plaintiff is correct that her headache allegations do not necessarily conflict with the activities cited by the ALJ. This is not a clear and convincing reason supported by substantial evidence with regard to Plaintiff's headache allegations. However, the ALJ provided other clear and convincing reasons supported by substantial evidence and therefore any error in this regard is harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

**B.    Step Five**

Plaintiff contends the ALJ erred at step five because the finding that there are jobs available that Plaintiff can perform was based on an incomplete hypothetical. ECF No. 10 at 20-21. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial

ORDER - 17

evidence, even when there is conflicting medical evidence. *Magallanes*, 881 F.2d at *id.*

Plaintiff's argument assumes the ALJ erred in considering Plaintiff's allegations. As discussed throughout this decision, the ALJ's findings were legally sufficient. Additionally, Plaintiff states in passing that the ALJ erred "by extension" in evaluating lay witness statements about the impact of her migraines on functioning. ECF No. 14 at 16. The Court will "review only issues that are argued specifically and distinctly." *Indep. Towers of Wash. v. Washington,* 350 F.3d 925, 929 (9th Cir.2003) (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). When a claim of error is not argued and explained, the argument is waived. *See Indep. Towers*, 350 F.3d. at 929–30 (holding that party's argument was waived because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"). In this case, the ALJ made findings with respect to the lay witness statements, Tr. 26, which were not addressed by Plaintiff.

Similarly, Plaintiff asserts in passing that "none of the medical sources addressed the impact [migraines] would have on her ability to attend work on a regular and continuing basis." ECF No. 11 at 14. First, Plaintiff did not challenge the ALJ's consideration of the medical opinion evidence, so if Plaintiff suggests the ALJ erred in that regard, the argument is waived. Second, Plaintiff is incorrect because the reviewing physicians, Drs. Olivares and Alto, whose opinions were

ORDER - 18

found to be persuasive by the ALJ, considered the record and Plaintiff's headache allegations yet found her capable of maintaining attendance and completing a normal workday and workweek.[3] Tr. 24, 84, 90, 116, 122. Third, Plaintiff did not report headaches or migraines to Dr. Ellingson, the consultative physician. Tr. 512-16. Dr. Ellingson noted migraines appeared in the records she reviewed but after examining Plaintiff, she assessed no limitations on attendance or in the ability to complete a workday or workweek. Tr. 512-516. Plaintiff's complaint that her headaches were not adequately considered in the medical opinions evidence is based on her own lack of reporting, which lends support to the ALJ's other findings.

The hypothetical contained the limitations the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical was therefore proper. *See Magallanes*, 881 F.2d at 756-57; *Bayliss v. Barnhart*, 427 F. 3d 1211, 1217-18 (9th Cir. 2005).

---

[3] It is also noted that Nancy Thompson, ARNP, referenced migraines and headaches in her August 2018 opinion. Tr. 569-70. She found Plaintiff capable of sedentary work which includes the capability of "sustaining the work level over a normal workday and workweek" on an ongoing basis. Tr. 570. However, the ALJ found the opinion unpersuasive, Tr. 25-26, and that finding is not challenged by Plaintiff.

ORDER - 19

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** March 21, 2024.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER - 20